## IN THE UNITED STATES DISTRICT COURT
## THE SOUTHERN DISTRICT OF FLORIDA

Miami Division

MELISSA PORRO,

     Plaintiff,

v.                                                                                             Case No.:

CITY OF SUNNY ISLES BEACH,
a Florida Incorporated Municipality,

     Defendant.

_____/

## **COMPLAINT**

Plaintiff, MELISSA PORRO ("Plaintiff" or "Mrs. Porro"), by and through her undersigned counsel, hereby sues Defendant, CITY OF SUNNY ISLES BEACH ("Defendant" or "Sunny Isles Beach"), and alleges as follows:

## **NATURE OF ACTION**

1. This action arises out of Plaintiff's employment relationship with Defendant, including sex discrimination, harassment, and retaliation to which she has been subjected in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760 et seq., 42 U.S.C. § 1983, § 1988, and related state law claims.

## **JURISDICTION AND VENUE**

2. This is an action brought for damages in excess of $75,000.00, exclusive of interest, attorneys' fees, and costs.

3. Venue of this action is properly placed in the Southern District of Florida, Miami Division, pursuant to 28 U.S.C. § 1391(b), since the employment practices hereafter alleged to be unlawful were committed in Miami-Dade County.

1

4. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

## PARTIES

5. At all times material hereto, Plaintiff was and is employed by Defendant, Sunny Isles Beach, in Miami-Dade County and was a resident of Miami-Dade and/or Broward County, and is otherwise *sui juris*.

6. At all times material hereto, Defendant, Sunny Isles Beach, was and is a Florida municipal corporation with its principal place of business located in Miami-Dade County at 18070 Collins Avenue, City of Sunny Isles Beach, Florida 33160.

7. At all times material hereto, Sunny Isles Beach has operated and controlled the Sunny Isles Beach Police Department ("the Department").

8. At all times material hereto, Sunny Isles Beach was the employer of Plaintiff and is a state actor for purposes of 42 U.S.C § 1983.

9. Plaintiff was at all relevant times an employee and agent of Sunny Isles Beach, as a law enforcement officer for the Sunny Isles Beach Police Department.

10. At all times relevant, Sunny Isles Beach was Plaintiff's employer and employed no less than twenty (20) or more employees for each of twenty (20) or more calendar weeks of the current or preceding year.

11. Sunny Isles Beach is accordingly an "employer" as defined under the FCRA and Title VII.

## PROCEDURAL REQUIREMENTS

12. All conditions precedent to this action have been fulfilled.

13. On or about November 19, 2018, Plaintiff provided notice of her potential claims to Sunny Isles Beach's Human Resources and Risk Management Director as required by Fla. Stat. § 768.28(6).

14. Additionally, on or about March 1, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming discrimination based on sex and retaliation.

15. On January 13, 2020, after more than ten (10) months had passed from the initial filing of her Charge of Discrimination, Plaintiff requested a Notice of Right to Sue from the EEOC.

16. On or about August 12, 2020, the U.S. Department of Justice served its Notice of Right to Sue on Plaintiff. Therefore, this Complaint is timely.

17. Plaintiff has complied with all conditions precedent to suit, including compliance with Fla. Stat. § 768.28(6) and its requirements.

18. Plaintiff has exhausted her administrative remedies prior to initiating the instant suit.

## FACTUAL ALLEGATIONS

19. On or about June 26, 2000, Plaintiff, a prospective female employee, was hired as a Police Trainee with the City of Sunny Isles Beach Police Department (the "Department") and was promoted to Police Officer on or about November 27, 2000.

20. For the years that followed, Plaintiff was subjected to increasing harassment, discrimination, retaliation, and humiliation in the workplace, among other disparate treatment, as a woman in the male-dominated Department.

21. Roughly between February and March 2001, during phase three of her Field Training Phase, Plaintiff was assigned to Officer Michael Mulvey (currently Lieutenant Mulvey).

22. Soon after, between 2001 and 2002, Plaintiff received disparaging statements and comments from Lieutenant Mulvey, whereby Lieutenant Mulvey consistently belittled, tortured, and embarrassed Plaintiff while training Plaintiff. Lieutenant Mulvey then went on to stalk and harass Plaintiff for the following year after she was released from Field Training.

3

23. During this time, Lieutenant Mulvey not only made countless inappropriate sexual comments to Plaintiff and other female officers, but showed Plaintiff pornographic images on city-issued laptops while seated in the passenger seat alongside Plaintiff, asking Plaintiff "What do you think about the set on this one?"

24. Lieutenant Mulvey continued to harass Plaintiff in various ways on numerous instances, including one evening while Plaintiff was walking out with another male officer and Mulvey proceeded to comment "Make sure to leave the key under the mat when you're done!" This remark was meant to imply the male officer sleeping with Plaintiff and then leaving the house key under the mat, even though Plaintiff was married at the time.

25. On another occasion, Lieutenant Mulvey was caught searching through Plaintiff's Department-provided inbox, which is assigned to exclusively to Plaintiff and contains various of her personal belongings and paperwork, an entirely unacceptable act that was deeply disturbing to Plaintiff.

26. Lieutenant Mulvey further created a hostile work environment for Plaintiff by intentionally ignoring her on-duty alarm calls and failing to render backup when called, despite an obligation to do so. On one specific occasion, Mulvey ignored Plaintiff's call regarding the search of an apartment alone and without radio signal. Thereafter, Plaintiff saw Mulvey across the street with another officer even though Plaintiff was calling for assistance.

27. Lieutenant Mulvey's improper behavior was widely recognized by the Department and its Command Staff, but regardless, Lieutenant Mulvey was never counseled or disciplined and was rather placed on a fast track for promotion, which he was awarded, despite not holding the four year degree required for his rank of Lieutenant.

28. Additionally, it is known that Lieutenant Mulvey was previously dismissed from the New State Police and Lauderhill Police Department for sexual harassment. Despite this, Mulvey was not let go from the Department despite his continuous sexual harassment towards female officers at the Department.

29. Over the following years, Plaintiff was thereafter targeted based on her sex and the fact that she was not a part of the "good old boys" network that did not tolerate female complaints.

30. Complaints for sexual harassment committed by Lieutenant Mulvey were squashed by the Command Staff including complaints by LeVette Stevens, former dispatcher for the Department, and Evelyn Gomez, another former dispatcher for the Department.

31. As another example of the hostile work environment at the Department, Captain Grandinetti, along with other male officers, frequently congregated in the Captain's office and watched through the City's camera system as unsuspecting female beachgoers sunbathed, as the Captain had camera access on a 60-inch television screen located inside his office.

32. Plaintiff was informed by Dispatcher Milagros Antela that the cameras were so good you could "see the moles on women's backs."

33. During the period between 2001 and 2008, Plaintiff nevertheless continued to work and excel in her assignments, receiving countless commendations and recognitions for excelling in her duties as a police officer. Plaintiff was the Officer of the Month, nominated for a LEO Award for her annual toy drive, and did commercials to represent the Department. Plaintiff holds article after article from the City newspaper where Chief Maas praised her as a well-rounded police officer.

34. Unfortunately, to Plaintiff's dismay, no matter how hard Plaintiff worked as a police officer during the period from 2001 through 2008, Lieutenant Mulvey would consistently act to torture, harass, and embarrass Plaintiff in the workplace.

35. On one specific occasion in 2006, Plaintiff's husband (then boyfriend) who had just returned from deployment was asked during a roll call what police vehicle he would be using. When he replied that he would be using Montesino's vehicle (Montesino was Plaintiff's prior marriage name), Mulvey replied "That's not all he got from her!"

36. Plaintiff endured and continued to excel despite the above-described work environment and treatment, and in December 2008, Plaintiff was promoted to the rank of Corporal within the Department.

37. Unfortunately, the promotion to Corporal only made things worse. Upon Plaintiff's promotion to Corporal, the Command Staff began a coordinated campaign of sexually discriminating against the Plaintiff.

38. Indeed, once Plaintiff put the Command Staff on notice about her ambitions and goals to move up in the rankings within the Department, members of the Command Staff did everything in their power to intervene and dismiss all promotional opportunities for Plaintiff and other female officers.

39. Due to Plaintiff being a woman, any and all statements, inquiries, and complaints she lodged were squashed or dismissed, as the Command Staff was run by the "good old boys" network that disfavored promotion of female officers because of their sex/gender.

40. During August 2011 through January 2012, Plaintiff, who was visibly pregnant with her second child, was placed on "light duty" but was nevertheless ordered by Captain Grandinetti to sit in

the lobby of the police station, which had no blinds and was thus dangerously hot and uncomfortable for a pregnant officer.

41. Further, it was widely known around the country that station lobbies had been ambushed and police officers had been shot in recent history, making it a dangerous area to sit, especially for a pregnant police officer.

42. No male officer on light duty was required to sit in the lobby, however, Plaintiff was ordered to do so while visibly pregnant. It was not until Plaintiff pleaded to Chief Maas (currently retired) to allow her inside the station that Plaintiff was relieved from complying with Captain Grandinetti's dangerous and harassing orders.

43. In December 2013, Plaintiff continued to ensure discriminatory treatment from within the Department, particularly when it became time for Plaintiff to receive another promotion in the Department.

44. For the years that followed, under Chief Maas and Chief Snyder's management, Plaintiff failed to receive promotions and deserved commendations due to unlawful discrimination. Furthermore, Plaintiff was subjected to consistent disrespectful behavior and was treated differently than her male coworkers, including similarly situated male officers such as Sergeant Zamora, Sergeant Royal, Officer Prongay, Captain Santiago, Corporal Ostrov, Officer Hones, Sergeant Plesa, Corporal Howell, Officer Alvarez, and Sergeant Schnell. These male officers and Plaintiff were similarly situated in all material respects besides gender, including, *inter alia*, their approximate ranks, experience level, duties, and responsibilities.

45. In October 2013, Plaintiff was next in line for the position of Sergeant, but without standard process and without posting of the opening, the position was assigned to a male officer,

Corporal Zamora, who had been assigned to the Administrative division as a Training Corporal and had been a Corporal for a year and a half less than Plaintiff.

46. In November 2013, soon after speaking with her Supervisor about Corporal Zamora's (now Sergeant Zamora) promotion, Plaintiff was called into a meeting with Chief Maas, where the Chief expressed displeasure with Plaintiff's mere questioning of Zamora's promotion. Chief Maas provided no valid reason as to why Corporal Zamora was promoted instead of Plaintiff. Rather, Chief Maas alleged that the position was given to Zamora by the City Manager, Chris Russo, and further stated that the opening was not posted because it needed to be filled immediately. These were all blatant lies as it was known that there were positions within the Department that remained vacant for years.

47. In April 2015, after having been passed up for promotion in 2013, Plaintiff was finally promoted to Sergeant. Despite having been promoted, the disparate treatment towards Plaintiff continued, regardless of her ranking, qualifications, and experience within the Department. In fact, when called in to be promoted, rather than receiving the promotion from Chief Maas himself, Plaintiff was walked into the City Manager's office by Chief Maas, who immediately walked out thereafter. The City Manager then informed Plaintiff of her promotion to Sergeant.

48. Plaintiff later thanked Chief Maas for the promotion via text message and said she was "speechless." Chief Maas tersely replied "You? Speechless? Congrats." It was evident from Chief Maas' demeanor that he was displeased with Plaintiff's promotion, and rather it was forced upon him by the City Manager, Chris Russo.

49. In April 2015, during Plaintiff's promotional ceremony, Plaintiff was once again subjected to disparate treatment when Chief Maas, rather than celebrating Plaintiff's promotion, made it a point during his speech to state that Plaintiff was on probationary status, and that she needed

8

to live up to the responsibilities of the position. No other male had ever been told that they were on probation during their promotion speech.

50. Further, all past male officers had traditionally taken a photograph with family, friends, and the Command Staff, as well received a cake and an area for family and fellow officers to congregate at their promotional ceremonies. None of this was provided to Plaintiff during her promotional ceremony.

51. The week following Plaintiff's promotion, Plaintiff was called into Captain Snyder's office (currently Chief Snyder) to explain to Plaintiff that she would need to transfer from day shifts to the far less preferable midnight shifts.

52. This transfer was an attempt to provide Sergeant Royal with the preferable day shifts instead of Plaintiff. Snyder would go on to orchestrate a position for Royal where he would work on "projects" that would eventually move him into the day shift schedule.

53. In August 2015, the Department announced they would hold interviews for the Lieutenant position, which Plaintiff applied for. Plaintiff, arriving in full class A attire, was continuously attacked by the Command Staff with accusatory questions on her supervisory style, and derided with accusations that the officers she supervised disliked her. Such information was provided by Officer Prongay (now Detective Prongay) who was a new male officer that disliked Plaintiff as a supervisor. However, contrary to these assertions, the officers under Plaintiff's supervision praised Plaintiff many times and adamantly denied ever saying anything negative about Plaintiff.

54. Nevertheless, the Command Staff decided to accept Officer Prongay's negative remarks and comments about Plaintiff and denied Plaintiff the Lieutenant position.

55. It was evident from the "interview" that once again, despite having the necessary qualifications and performance, Plaintiff was unjustifiably denied a fair and just opportunity to receive an objective interview for a position and promotion that Plaintiff deserved. The Lieutenant position was ultimately filled by a male officer, Lieutenant Edward Santiago (now Captain Santiago). Lieutenant Santiago is another similarly situated male officer within the Department who has been given more promotion opportunities than Plaintiff. In fact, Lieutenant Santiago was promoted from Sergeant to Lieutenant to Captain, all within the span of four years.

56. In June 2016, Plaintiff was injured on duty after she was bitten by a violent Baker Act subject. Plaintiff also reinjured her knee that was previously injured in a 2008 on-duty incident, which now required knee surgery.

57. Following the incident, Plaintiff required assistance to test the subject who had bitten her for communicable diseases, including HIV. Despite this fact, Captain Grandinetti refused to provide any assistance to Plaintiff, instead advising Plaintiff to handle this matter herself. Through outside sources, Plaintiff found out that there was a much more efficient method to testing the subject and managed to obtain such results.

58. In September 2016, while awaiting knee surgery after the violent biting incident, the Department continued to exhibit disparate and hostile treatment towards Plaintiff by reprimanding and punishing Plaintiff for an incident involving a juvenile prisoner.

59. During said incident, a similarly situated male officer committed countless errors and mishandling of the juvenile prisoner. Rather than reprimanding and punishing the male officer, Plaintiff was called into a meeting with Captain Snyder (now Chief Snyder) and Captain Grandinetti, where they attempted to hold Plaintiff responsible for everything that happened.

Meanwhile, the male officer was not subjected to any discipline and was rather later rewarded with a promotion to the position of Marine Patrol Officer.

60. Following the September 2016 incident with the juvenile prisoner, Plaintiff was attending pre-operation therapy on her knee and received a call from the Department to come into work early. Upon Plaintiff's arrival, Captain Santiago, acting upon Captain Grandinetti's orders, degraded and belittled Plaintiff by ordering her to transport the juvenile prisoner from the hospital to the jail, a task that had never been performed by a Sergeant in the history of the Department, yet something that Plaintiff, a female Sergeant, was ordered to do – alone – just days before her scheduled knee surgery.

61. In October 2016, upon returning from knee surgery, Plaintiff was placed on light duty along with another male officer who had been injured on duty. Inexplicably, Plaintiff was again ordered to sit outside in the lobby while the male officer, Officer Hones, was permitted to sit safely inside the station.

62. Plaintiff once again received disparate treatment because of her gender while lesser-ranked male Officer Hones was placed safely inside the station and allowed to leave early almost every day while Plaintiff was ordered to sit outside the entire shift. Similarly, another male officer, Sergeant Royal, who was injured on the job, was allowed to roam the station freely without being ordered to sit outside in the station lobby.

63. In December 2016, upon returning to full duty status, Plaintiff, along with another female Officer, Corporal Cary Vesco, and a male Officer, Corporal Plesa (now Sergeant Plesa), applied for an Administrative Supervisor position posted within the Department.

64. Plaintiff and Corporal Vesco both arrived in business attire while Corporal Plesa arrived in jeans, a black polo, and converse shoes. The same day of the interview, an email was sent out

within the Department announcing that Corporal Plesa had been promoted to Administrative Supervisor over Plaintiff.

65. Once again, even though Plaintiff, a female Sergeant, ranked higher than male Corporal Plesa, and had significantly more seniority within the department than male Corporal Plesa, Plaintiff was passed over for the promotion into the Command Staff, a position she was well-qualified to hold.

66. Indeed, although Plaintiff held the requisite qualifications, the position was assigned to male officer Plesa who had only been a Corporal for a mere five months. Plaintiff, along with female Corporal Vesco, both of whom worked in the Department longer than Corporal Plesa, and longer than the current supervisors, were passed over for promotion because it was "just a lateral move," according to Captain Grandinetti.

67. In November 2017, Plaintiff sent an email to Chief Mass regarding promotional opportunities. Upon doing so, Plaintiff was confronted by Captain Santiago inquiring about the email to which Plaintiff replied that she would discuss it with Chief Maas only.

68. Later, Captain Grandinetti cornered Plaintiff and, speaking in reference to her email to Chief Maas, stated "We do what we do because we can!" and "What more do you want? This is a small agency and you have moved up a lot since you have been here!" The latter statement was made on numerous occasions to Plaintiff.

69. The aforementioned statements and actions clearly demonstrated the discrimination against Plaintiff, suggesting that Plaintiff should be grateful for even having been promoted as a woman. Further, these statements implied that Plaintiff would be denied an equal opportunity to keep moving up the rankings within the Department, because as a woman, she should be

content with what she currently held. This disparate treatment was further evident from the statements made by Captain Grandinetti, including "What more do you want?"

70. Upon cornering Plaintiff, Captain Grandinetti also stated that Corporal Plesa had "blown the Command Staff out of the water" during the interview process for the Administrative Supervisor position a year prior.

71. After being passed over for the first Administrative Supervisor position, Plaintiff took the initiative to pursue her graduate degree in Public Administration since she was "blown out of the water" in the previous interview by Plesa. Given that Plesa held a Masters' degree, Plaintiff believed such a degree would serve as an additional qualification if a second Administrative Supervisor position became available.

72. Before the second Administrative Supervisor position was posted, Plaintiff was consistently pushed by Chief Maas to pursue community policing and develop a community policing manual in an effort to discourage and deter her from applying to the vacant position in the Command Staff. To this day, nobody within the Department has even inquired about the community policing manual that she prepared.

73. In June 2018, prior to the second Administrative Supervisor position becoming available, Plaintiff was called into a meeting with current Police Chief, Dwight Snyder, who was Patrol Captain at the time, and Administrative Captain Grandinetti, regarding Plaintiff's future goals.

74. During said meeting, Plaintiff was dismissively asked "What exactly do you think this [Master's] degree is going to do for you with this Administrative position?" Further, even though the application deadline had not yet passed, Plaintiff was asked by Administrative Captain Grandinetti what exactly he was supposed to tell the other applicant, male Corporal William Howell.

75. Captain Grandinetti's questioning of Plaintiff demonstrated an intent and clear plan by the Command Staff to promote the less qualified and less experienced male Corporal Howell, dismissing the significantly more qualified and experienced Plaintiff as a legitimate candidate for the position.

76. Despite the clear lack of support within the Command Staff, Plaintiff continued to pursue her ambitions and in June 2018 applied for the second Administrative Supervisor position.

77. On October 1, 2018, without warning or notice, Plaintiff was called to interview for the position. On October 9, 2018, Plaintiff was once again denied in favor of the less qualified male Corporal Howell, who had only just returned to the patrol division.

78. It was known amongst the members of the Department that the less qualified Corporal Howell lacked experience in the operations of the Department, specifically patrol functions, policies, procedures, Florida statutes, and supervisory paperwork.

79. When Plaintiff confronted Captain Grandinetti with this information, he inexplicably responded, "Yeah, I know, that's why he would be good for Administration." Grandinetti's response clearly demonstrated a complete disregard for the Plaintiff's qualifications that were superior to the lower ranked and less experienced, male Corporal Howell, and exhibited that there was no intention to seriously consider Plaintiff for promotion over less qualified male officers.

80. In October 2018, Plaintiff was informed by Sergeant Alvarez and Corporal Agins that Captain Grandinetti did not like Plaintiff's complaints about disparate treatment and that he would pick who he wants to work with him so that he feels more comfortable around that person and does not have to "watch what he says", regardless of who is more qualified. These statements are reflective of Captain Grandinetti's past disparate treatment towards Plaintiff due to her

14

sex/gender as a female, denying her the opportunity to work besides Captain Grandinetti and the rest of the Command Staff due to his disfavor of female officers as opposed to male officers.

81. In October 2018, at approximately 9:30 a.m., Plaintiff received a phone call from Captain Santiago regarding the Captain's aforementioned statements, stating that he did not know what to say to Plaintiff and that he was "sorry."

82. Captain Santiago went on to explain to Plaintiff that all that could be done was for Plaintiff to "hold on until things change", referring to Captain Grandinetti's planned retirement the following year.

83. Captain Santiago's statements attest to the disparaging and discriminatory statements and actions by Captain Grandinetti towards the Plaintiff because of her sex/gender, further demonstrating that Captain Grandinetti prevented and refused to allow Plaintiff to "climb the ladder" into the Command Staff within the Department due to her sex/gender as a woman.

84. When Plaintiff expressed her opposition to this abject discrimination, Plaintiff was repeatedly warned and discouraged from voicing her complaints by other police officers in the Department who consistently told Plaintiff that "Going to HR is career suicide" and "Don't go to the manager."

85. The Department and its officers specifically discouraged and deterred Plaintiff from inquiring about promotional opportunities or complaining about not receiving promotions, as other male officers regularly did within the Department, including male officers such as Corporal Howell who complained to the Department Command Staff about not being promoted and Officer Prongay who also demanded he be promoted. Unlike Plaintiff, these male officers who complained were subsequently promoted in short order.

86. On or about November 19, 2018, Plaintiff provided notice of her potential claims to Sunny Isles Beach's Human Resources and Risk Management Director. Since providing notice, the Plaintiff has faced retaliation from the Department on several occasions.

87. This retaliation has included Plaintiff being totally ignored on duty, punished, and harassed through the enforcement of policies against Plaintiff that are not regularly enforced against other officers.

88. Since providing notice of her claims, Plaintiff has been blatantly ignored by Chief Snyder, who does not speak to Plaintiff on many occasions when he otherwise would.

89. Since providing notice of her claims, Captain Grandinetti has changed his stance and resorted to providing less disparate treatment to Plaintiff in pursuit of his goal to become the next Chief at the Department.

90. Since providing notice of her claims, Plaintiff has been blatantly ignored by Sergeant Plesa on several occasions, whereby Sergeant Plesa walks by Plaintiff and says nothing, an unusual manner from Sergeant Plesa towards Plaintiff, and atypical conduct between officers who work together in the Department.

91. Since providing notice of her claims, specifically between November 2018 – January 2019, Plaintiff was informed that interviews would be conducted regarding her claims. However, officers such as Sergeant Schnell, who is a vital witness to the many incidents and facts that Plaintiff communicated to the City during their first and only meeting regarding her claims, was not interviewed.

92. Further, no witnesses were interviewed related to the incidents involving the sexual harassment by Lieutenant Mulvey towards Plaintiff during Field Training, nor as to Plaintiff's complaints against Mulvey ever since those incidents.

93. In January 2019, an incident took place where Officer Joe Alvarez was placed on light duty as a result of an eye injury. Officer Alvarez was allowed to sit outside the Sergeant's office and roam the station. In this specific instance, Plaintiff walked into the station and sarcastically let it be known (while standing near Sergeant Plesa's office) that Plaintiff was under the impression that everyone placed on light duty had to sit outside in the lobby, but that apparently the rule must only apply to Plaintiff (in regards to prior incidents where Plaintiff was forced to sit in the lobby). Approximately two hours later, a memo was circulated instructing Officer Alvarez of his assignment to sit outside the station lobby.

94. Since filing her notice of claims, the Department has implemented new procedures such as the memorandum used in the aforementioned incident regarding Officer Joe Alvarez (now retired).

95. Since filing her notice of claims, Plaintiff has received consistent memos from Lieutenant Mulvey regarding minor issues in a clear effort to manufacture deficiencies in Plaintiff's work activity. These memos have been allowed to continue despite their baselessness and the Department's knowledge of the history involving Mulvey with Plaintiff.

96. On or about March 1, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), claiming discrimination based on sex and retaliation.

97. During March 2019 – April 2019, Plaintiff was on vacation, bereavement, and training. Plaintiff returned in April 2019 and was advised by Captain Santiago about a Sergeant meeting that took place while Plaintiff was absent on March 20, 2019.

98. Captain Santiago stated to Plaintiff that during the meeting, the Sergeants "got into it" and "called out" Lieutenant Mulvey for all the ridiculous memos that he had been sending to Plaintiff. Captain Santiago then informed Plaintiff that Lieutenant Mulvey had not issued any

memos since the meeting on March 20, 2019. However, on that same day, Plaintiff, who had just returned to work after a month off, received a memo from Lieutenant Mulvey specifically targeting Plaintiff and her work. This was purposely done in memo form rather than sending a private email that would have served the same purpose and result.

99. In April of 2019, Sergeant Zamora notified Plaintiff that the computer system had crashed. After speaking with the Department's IT worker, he explained to Plaintiff that all her desktop and laptop files were erased due to an "issue" and the system crashing just by "coincidence."

100. As a result of this "coincidence", every file ever saved on Plaintiff's desktop and laptop was wiped out, including sensitive and important records of Plaintiff's work over the years. Although the Department's IT worker was able to retrieve some files, many important files were irretrievably lost. Since filing her claims, on various occasions upon returning to work, Plaintiff has on several occasions noticed that her desktop has been tampered with.

101. In April 2019, Plaintiff continued to receive retaliation from Captain Grandinetti via Sergeant Plesa. This time, Plaintiff was informed by Lieutenant Wyche that Captain Grandinetti wanted Lieutenant Wyche to write up Plaintiff for being inside dispatch for ten minutes in February 2019.

102. However, many other Officers, including male Officers, were continuously inside dispatch and were not written up. Lieutenant Wyche advised Captain Grandinetti that he refused to write up Plaintiff and single her out when it was clear that Officers were inside dispatch all the time without issue.

103. In June 2019, Plaintiff again faced backlash and retaliation when Sergeant Zamora informed Plaintiff that Captain Grandinetti was angered at Plaintiff for requesting public records from the City of Sunny Isles Beach.

104.    In July 2019, Plaintiff was sexually harassed by retiring male Sergeant Gnagi during his retirement event. While Plaintiff was taking a photograph with Sergeant Gnagi, Gnagi proceeded to put his arm around Plaintiff and his hand over Plaintiff's breast "as a joke." Officers within the Department witnessed the incident and laughed. Plaintiff then broke down in tears in her car from the humiliation.

105.    Following the incident with Sergeant Gnagi, Plaintiff filed a Complaint with Chief Snyder and was informed the incident would be investigated through Internal Affairs (IA). However, Plaintiff was later advised by Chief Snyder that the Complaint would be investigated by the Miami-Dade Police Department.

106.    In September 2019, Plaintiff was approached by female Officer Carulo, an officer in Plaintiff's patrol squad, informing Plaintiff that Lieutenant Mulvey had broken the chain of command by sending Carulo a direct email stating that Carulo was correct and Plaintiff was wrong in regards to a report that Plaintiff had previously denied to Carulo. Once again, Lieutenant Mulvey undermined and attempted to discredit Plaintiff and her standing in the Department as he has been permitted to do throughout Plaintiff's career with impunity.

107.    In October 2019, Plaintiff once again faced retaliation and punishment when Officer Hall, an officer that Plaintiff supervises, was being recognized at an award ceremony. Supervisors are traditionally invited to these ceremonies. Yet on this occasion, former Chief Maas who was sending out the invitations, deliberately failed to send an invitation to Plaintiff even though she was Officer Hall's supervisor, and even though the ceremony was on Plaintiff's day off.

108.    To this date, the Department holds several vacant Lieutenant and Supervisory positions which Plaintiff is qualified to fill, desires to fill, but is not considered for.

109.   The aforementioned conduct violated the City of Sunny Isles Beach's own Municipal Charter.

110.   Specifically, Sunny Isles Beach, by and through its employees, agents, servants, and the Department, violated Policy No. 809:1, titled "Sexual and Other Harassment," which holds, in pertinent part:

> "It is the policy of the City to ensure that all employees are able to work in an environment which is free from all forms of harassment and discrimination on the basis of race, color, age, sex, pregnancy, national origin, ancestry, citizenship status, religion, marital status, familial status, sexual orientation, genetic information, disability, and any other characteristic protected by federal, state or local law. Harassment and discrimination of any form is prohibited and will result in disciplinary action up to and including termination. The City also prohibits retaliation against any individual who has opposed unlawful discrimination or harassment, or participated in any manner in an investigation, proceeding or hearing regarding unlawful discrimination or harassment. Harassment of any kind will not be tolerated. The City Manager or his/her designee is charged with the overall responsibility for the administration of this policy. The City's basic goal is the equal and fair treatment of all employees."

111.   Sunny Isles Beach violated the above Section when the employees and agents in the Department, such as Chief Mass, Chief Snyder, Captain Grandinetti, and Lieutenant Mulvey, discriminated, harassed, humiliated, punished, disciplined, and retaliated against female police officers, including Plaintiff, who work and have worked as a law enforcement officers within the Department.

112.   As of the filing of this Complaint, Plaintiff remains employed with the Department and continues to be subjected to discriminatory treatment and retaliation in violation of law.

113.   Plaintiff has retained the law offices of the undersigned attorneys to represent her in this action and is obligated to pay reasonable attorneys' fees and costs.

**<ins>COUNT I – SEX DISCRIMINATION AGAINST SUNNY ISLES BEACH</ins>**
**Under Florida Civil Rights Act of 1992 (FCRA), 760.01 et seq., Fla. Stat.**

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 113, as if fully set forth herein.

114.    Plaintiff is a woman and is a "person aggrieved" under the FCRA.

115.    At all times material hereto, Sunny Isles Beach is and has been Plaintiff's "employer" under the FCRA.

116.    Section 760.10 of the FCRA states in relevant part:

"(1) It is an unlawful employment practice for an employer:

To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

117.    The FCRA accordingly prohibits discrimination based on sex.

118.    The treatment and discrimination to which Plaintiff has been subjected by Sunny Isles Beach and the Department, as set forth above and incorporated herein, has been the result of Plaintiff's sex/gender, which male individuals have not been and would not have been subjected, in violation of the FCRA.

119.    Plaintiff was clearly qualified for her job and promotions she has been repeatedly denied, as she has received countless positive performance evaluations and has been employed by Sunny Isles Beach for over twenty years.

120.    Plaintiff has been subjected to multiple adverse employment actions, including discrimination and harassment on the basis of her sex, as more fully set forth above.

121.    Similarly situated male employees, such as Sergeant Zamora, Sergeant Royal, Detective Prongay, Captain Santiago, Lieutenant Wyche, Corporal Ostrov, Officer Hones, Sergeant Plesa, Corporal Howell, Officer Alvarez, and Sergeant Schnell were treated more favorably

than Plaintiff, as set forth in detail above. The foregoing male employees are similarly situated to Plaintiff in all relevant respects, including ranks, experience level, and assigned duties.

122.     The acts of sex discrimination described hereinabove including, but not limited to, assigning Plaintiff to midnight shifts, publicly disparaging her to coworkers, failing to discipline male Officers committing disparaging and improper behavior, dangerously assigning her to the outside station lobby during her pregnancy, failing to provide equal and objective interviews and qualification criteria, denying medical assistance after her on-duty injuries, discouraging her from applying to vacant positions, denying her promotional opportunities, blatantly lying as to why she was denied promotions, and issuing humiliating memos regarding her supervisory skills, among other discriminatory actions, constituted adverse employment actions and were sufficiently severe and pervasive so as to create an intolerable hostile working environment, affecting the terms and conditions of the Plaintiff's employment.

123.     The acts of sex discrimination described hereinabove were unwelcome and offensive to Plaintiff.

124.     Sunny Isles Beach knew or should have known of the acts of sex discrimination described hereinabove and failed to take prompt corrective action to remedy the harassment, and at all times relevant to this action, the employees, agents, and elected officials of Sunny Isles Beach were in the control of the Department, and the Department officers and employees referred to hereinabove were employees and/or agents of Sunny Isles Beach and were acting in the course and the scope of their authority.

125.     Sunny Isles Beach's alleged bases for its adverse conduct against Plaintiff are pretextual and asserted only to cover up the discriminatory nature of its conduct.

126.    Even if Sunny Isles Beach could assert legitimate reasons for its adverse actions against Plaintiff, for which reasons it does not have, Plaintiff's sex/gender was also a motivating factor for Sunny Isles Beach's adverse conduct toward Plaintiff.

127.    Sunny Isles Beach, as the employer of Plaintiff, has failed to take any prompt and effective remedial action reasonably calculated to result in the prevention and/or remedy of the sex discrimination of Plaintiff.

128.    Furthermore, as a result of Sunny Isles Beach's discriminatory actions due to her sex/gender, including but not limited to the failure to promote Plaintiff to positions for which she has applied and is qualified in favor of less qualified male officers, Plaintiff has experienced and will continue to experience significant financial and economic loss in the form of lost wages and lost benefits. Plaintiff has also experienced and will continue to experience emotional anguish, pain and suffering and loss of dignity damages. Plaintiff accordingly demands lost economic damages in the form of back pay and front pay, interest, lost benefits, and compensatory damages.

129.    Plaintiff further seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff prays for the entry of a judgment in her favor and against Defendant, Sunny Isles Beach, awarding damages in the form of back pay and front pay, lost wages, interest, lost benefits, pre and post judgment interest, as well as compensatory damages and attorney's fees and costs, and any and all other relief this court deems equitable and just.

### COUNT II – SEX DISCRIMINATION AGAINST SUNNY ISLES BEACH
**Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000**

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 113 as if fully set forth herein.

130.   Plaintiff is a woman and is an "individual" and "employee" under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.

131.   Sunny Isles Beach is a "person" and an "employer" of Plaintiff under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.

132.   Title VII of the Civil Rights Act of 1964 states, *inter alia*, that "[i]t shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…". *See* 42 U.S.C. §2000e et seq.

133.   The acts of discrimination described herein were done on account of Plaintiff's sex.

134.   Plaintiff was clearly qualified for all promotions that she has been denied, including several that were given to less qualified male officers, as she has received countless positive performance evaluations and has been employed by Sunny Isles Beach and the Department for over twenty years.

135.   Plaintiff has been subjected to multiple adverse employment actions by the Department, including discrimination, harassment, and retaliation.

136.   Similarly situated male employees, such as such as Sergeant Zamora, Sergeant Royal, Detective Prongay, Captain Santiago, Lieutenant Wyche, Corporal Ostrov, Officer Hones, Sergeant Plesa, Corporal Howell, Officer Alvarez, and Sergeant Schnell were treated more favorably than Plaintiff, as set forth in previous examples. The foregoing male individuals are similar to Plaintiff in all relevant respects, including rank, experience level, and assigned duties.

137.    The acts of sex discrimination described hereinabove including, but not limited to, assigning Plaintiff to midnight shifts, publicly disparaging her to coworkers, failing to discipline male Officers committing disparaging and improper behavior, dangerously assigning her to the outside station lobby during her pregnancy, failing to provide equal and objective interviews and qualification criteria, denying medical assistance after her on-duty injuries, discouraging her from applying to vacant positions, denying her promotional opportunities, blatantly lying as to why she was denied promotions, and issuing humiliating memos regarding her supervisory skills, among other discriminatory actions, constituted adverse employment actions and were sufficiently severe and pervasive so as to create an intolerable hostile working environment, affecting the terms and conditions of the Plaintiff's employment.

138.    The acts of sex discrimination described hereinabove were unwelcome and offensive to the Plaintiff.

139.    Sunny Isles Beach knew or should have known of the acts of sex discrimination described hereinabove and failed to take prompt corrective action to remedy the harassment, and at all times relevant to this action, the employees, agents, and elected officials of Sunny Isles Beach were in the control of the Department, and the Department officers and employees referred to hereinabove were employees and/or agents of Sunny Isles Beach and were acting in the course and the scope of their authority.

140.    The foregoing acts of sex discrimination violated Plaintiff's right to be free from sex discrimination under Title VII.

141.     As a direct result of the foregoing acts of sex discrimination, Plaintiff has lost wages and other employment benefits and/or has suffered emotional distress, humiliation, embarrassment, anguish, and loss of enjoyment of life.

WHEREFORE, Plaintiff prays for the entry of a judgment in her favor and against Defendant, Sunny Isles Beach, awarding damages in the form of back pay and front pay, lost wages, interest, lost benefits, as well as compensatory damages and attorney's fees and costs, and any further relief this Court deems equitable and just.

## COUNT III – HOSTILE WORK ENVIRONMENT AGAINST SUNNY ISLES BEACH

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1- 113 as if fully set forth herein.

142.     By the above alleged acts, Defendant has violated Title VII's guarantee of the right to work in an environment free from intimidation, ridicule, and insult.

143.     Throughout Plaintiff's employment and continuing to this day, the Department has maintained a hostile working environment contaminated by a pattern of offensive conduct, including harassment and discrimination directed at women, and in particular, Plaintiff. Such conduct has been severe, pervasive, and ongoing.

144.     The acts of harassment and discrimination described herein occurred because of Plaintiff's membership in a protected class as a woman, and because of Plaintiff's complaints about same.

145.     Indeed, the hostile work environment has been worsened by the Department's subjecting Plaintiff to continued acts of retaliation, which have occurred because of Plaintiff's complaints about harassment and discrimination to which she continues to be subjected.

146.    Plaintiff was clearly qualified for her job as she had received countless positive performance evaluations and had been employed by Sunny Isles Beach and the Department for over twenty years.

147.    Plaintiff was subjected to multiple adverse employment actions, including discrimination, harassment, and retaliation from the Department.

148.    Similarly situated male employees, such as Sergeant Zamora, Sergeant Royal, Detective Prongay, Captain Santiago, Lieutenant Wyche, Corporal Ostrov, Officer Hones, Sergeant Plesa, Corporal Howell, Officer Alvarez, and Sergeant Schnell were not subject to the same harassment by the Department and were treated more favorably than Plaintiff, as set forth in previous examples. The foregoing male individuals are similar to Plaintiff in all relevant respects, including rank, experience level, and assigned duties.

149.    The acts of sex discrimination described hereinabove including, but not limited to, assigning Plaintiff to midnight shifts, publicly disparaging her to coworkers, failing to discipline male Officers committing disparaging and improper behavior, dangerously assigning her to the outside station lobby during her pregnancy, failing to provide equal and objective interviews and qualification criteria, denying medical assistance after her on-duty injuries, discouraging her from applying to vacant positions, denying her promotional opportunities, blatantly lying as to why she was denied promotions, and issuing humiliating memos regarding her supervisory skills, among other discriminatory actions, constituted adverse employment actions and were sufficiently severe and pervasive so as to create an intolerable hostile working environment, affecting the terms and conditions of the Plaintiff's employment.

150.    The acts of harassment and discrimination described hereinabove were unwelcome and offensive to Plaintiff.

151.    The Department has engaged in the discriminatory practices complained of herein.

152.    The Department's Command Staff, including but not limited to retired Chief Maas, Chief Snyder, Captain Grandinetti, Captain Santiago, and Sergeant Plesa, knew or should have known of the acts of sex discrimination, harassment, and retaliation described hereinabove and failed to take prompt corrective action to remedy the acts and conduct.

153.    Sunny Isles Beach knew or should have known of the acts of sex discrimination, harassment, and retaliation that formed this hostile work environment described hereinabove and failed to take prompt corrective action to remedy the harassment, and at all times relevant to this action, the employees, agents, and elected officials of Sunny Isles Beach were in the control of the Department, and the Department officers and employees referred to hereinabove were employees and/or agents of Sunny Isles Beach and were acting in the course and the scope of their authority.

154.    Defendant took no steps to stop the harassment of Plaintiff.

155.    The harassment was severe or pervasive enough to change the conditions of Plaintiff's employment and create an abusive environment, judged by both an objective standard and a subjective standard.

156.    Plaintiff took advantage of all preventative or corrective opportunities as provided by the Defendant and did everything possible to avoid the harm.

157.    Plaintiff has been damaged because of said hostile work environment.

WHEREFORE, Plaintiff prays for the entry of a judgment in her favor and against, Defendant, Sunny Isles Beach, awarding damages in the form of back pay and front pay, lost wages, interest,

lost benefits, as well as compensatory damages and attorney's fees and costs, as well as any further relief the Court deems equitable and just.

## COUNT IV – CIVIL RIGHTS VIOLATION
## UNDER 42 U.S.C. 1983 AGAINST SUNNY ISLES BEACH

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 113, as if fully set forth herein.

158. 42 U.S.C. § 1983 states, *inter alia*, as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ..."

159. Sunny Isles Beach is a "person" for purposes of § 1983 and Sunny Isles Beach is therefore a proper defendant in this § 1983 Action.

160. Sunny Isles Beach, under color of law, by the enforcement of a municipal policy, a municipal practice, or a decision of a municipal final policymaker, subjected Plaintiff to the deprivation of her right to Freedom of Association pursuant to the First Amendment to the United States Constitution, and is therefore liable for the damages and other relief sought in this Action.

161. Plaintiff was an employee of Sunny Isles Beach from 2000 to present.

162. For the majority of Plaintiff's employment, and at all times relevant hereto, the City of Sunny Isles Beach Police Department's Command Staff included but was not limited to, Chief Maas, Chief Snyder, and Captain Grandinetti.

163. Upon information and belief, the Department's Command Staff knew that Plaintiff had the necessary qualifications and skills to be part of the Department Command Staff, fill any vacant

positions, and/or be offered promotional opportunities, but deliberately denied Plaintiff such opportunities because she was a woman.

164.    This belief is based on statements, phone calls, and interviews, as well as conversations between fellow officers and Plaintiff.

165.    As a female employee of the Sunny Isles Beach Police Department, Plaintiff was deterred and discouraged from inquiring about promotional opportunities and from applying to vacant positions within the Department, and on several occasions was indirectly "set up" to face unprecedented interviews without objective criteria used to evaluate her qualifications.

166.    At all material times hereto, Plaintiff's conduct constituted an individual, legally protected association under the First Amendment to the United States Constitution.

167.    Throughout Plaintiff's time at the Department, the Command Staff dismissed Plaintiff's inquiries regarding promotions and vacant positions. Additionally, the Command Staff deterred Plaintiff from applying to higher positions by pushing her to pursue Community Policing which was never concretely developed or pursued by the Department in the first place. The Command Staff further prohibited Plaintiff from establishing a common association amongst her fellow officers by placing her in positions where she would fail such as sitting in the station lobby, switching to midnight shifts, setting her up to be attacked during informal interviews, and issuing memorandums attacking her skills as a police supervisor in the Department. All of this conduct from the Command Staff constituted a prohibition on Plaintiff's ability to associate freely and willingly within the Department in order to pursue her goals and promotional opportunities.

168.    Due to Plaintiff being a woman, the Command Staff discriminated, retaliated against, and constructively prohibited Plaintiff from associating within the Department.

169.    Sunny Isles Beach provided pretextual and false reasons for its disciplinary actions towards Plaintiff.

170.    The proffered reasons were mere pretexts for the violation of Plaintiff's First Amendment right to Freedom of Association as Plaintiff did the aforementioned just like any other officer in the Department had done, including male officers.

171.    Plaintiff's conduct as a woman inquiring about vacant positions and promotional opportunities was a substantial or motivating factor in Defendants' adverse employment actions.

172.    The conduct described herein constituted adverse employment actions and were sufficiently severe and pervasive so as to create an intolerable hostile working environment, affecting the terms and conditions of the Plaintiff's employment.

173.    As a direct and proximate result of Plaintiff's actions in violation of Plaintiff's First Amendment right to Freedom of Association, Plaintiff has incurred and continues to incur damages, including without limitation lost wages, lost benefits, lost promotions, lost perquisites, termination, and other lost remuneration and economic opportunities.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendant, Sunny Isles Beach, awarding Plaintiff compensatory damages as well as costs, interest, attorneys' fees, pursuant to 42 U.S.C. § 1988, and any such further relief this Court deems just and proper.

### COUNT V – VIOLATION OF THE CONSTITUTIONAL RIGHT TO FREE SPEECH
### (First Amendment Retaliation Against Sunny Isles Beach)

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 83 as if fully set forth herein.

174.  The United States Constitution's First Amendment guarantee to free speech applies to local and state governments through decisions of the United States Supreme Court, as well as through the Fourteenth Amendment.

175.  At all times relevant hereto, Plaintiff was an employee of Sunny Isles Beach.

176.  Sunny Isles Beach is a municipal government.

177.  At all times material hereto, Sunny Isles Beach has operated and controlled the Sunny Isles Beach Police Department ("the Department").

178.  Plaintiff, as an officer within the Department, often made or attempted to make statements regarding vacant positions or promotional opportunities within the Department. Further, Plaintiff filed Complaints for sexual harassment and discrimination against the Department.

179.  The Department's Command Staff retaliated against Plaintiff for being outspoken as a woman in a Department run by men, denying her the opportunity to be promoted, and denying her the opportunity to work freely without interruption

180.  Plaintiff's freedom of speech was violated by the Command Staff through the use of retaliation and harassment that would put her career at risk if she made statements, inquiries, or comments regarding her promotional opportunities.

181.  The Command Staff violated Plaintiff's freedom of speech by harassing her and asking Plaintiff "What more do you want?" in order to deter Plaintiff from making further discussion about joining the Command Staff as a woman.

182.  The Command Staff further retaliated against Plaintiff through the specific enforcement of rarely enforced policies in an effort to target Plaintiff after her filing of notice of claims and her subsequent complaints with the EEOC and the City.

183.  The statements and inquiries by Plaintiff did not disrupt the function of the Department.

32

184.   In violation of Plaintiff's First Amendment right to free speech, Sunny Isles Beach, acting through its Police Department, harassed and discriminated against Plaintiff's employment in retaliation for the statements and inquiries she made.

185.   After Plaintiff's protected statements and disclosures, the retaliation and harassment have been continuing as of the filing of this action.

186.   The conduct described herein constituted adverse employment actions and were sufficiently severe and pervasive so as to create an intolerable hostile working environment, affecting the terms and conditions of the Plaintiff's employment.

187.   As a result of Sunny Isles Beach's retaliation in violation of the First Amendment, Plaintiff has been damaged.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor and against Defendant, Sunny Isles Beach, awarding Plaintiff damages as well as costs, back pay, interest, attorneys' fees, and any such further relief this Court deems just and proper.

### COUNT VI – SEXUAL HARASSMENT AGAINST SUNNY ISLES BEACH

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 113 as if fully set forth herein.

188.   At all times material hereto, Sunny Isles Beach has operated and controlled the Sunny Isles Beach Police Department ("the Department").

189.   Sunny Isles Beach, through the Department, created and maintained a hostile work environment for Plaintiff.

190.   The hostile work environment was because of Plaintiff's protected class as a woman.

191.   The hostile work environment is attributable to Sunny Isles Beach as the environment was created by its Department's supervisors and employees.

192.    The sexual harassment of Plaintiff began shortly after she was hired and continues as of the filing of this Complaint.

193.    The harassment and hostile work environment has consisted of Plaintiff being subjected to, *inter alia*, grotesque explicit sexual comments, inappropriate videos, unwanted touching, and innuendos, including by Department employees Mulvey and Gnagi, as set forth in more detail above.

194.    Despite Plaintiff's complaints regarding these acts, the Department has taken no sufficient administrative action to discipline the involved officers, but rather chose to continue this harassment by treating Plaintiff as a problem employee.

195.    The hostile work environment was severe and pervasive enough to change the conditions of Plaintiff's employment.

196.    Any reasonable person would find the conduct to which Plaintiff has been subjected abusive.

197.    Plaintiff found the conduct abusive.

198.    Defendant's conduct unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive working environment (29 C.F.R.§) 1604.11(a).

WHEREFORE, Plaintiff respectfully demands that this Court enter judgment in her favor against the Defendant, Sunny Isles Beach, for damages plus costs, interest and attorneys' fees, and any other relief this Court deems equitable and just.

### COUNT VII – RETALIATION AGAINST SUNNY ISLES BEACH UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 113 as if fully set forth herein.

199.     Plaintiff has engaged in activity protected by Title VII, including but not limited to verbally complaining, filing internal grievances, and filing a charge of discrimination with the EEOC, regarding discrimination and harassment to which she has been subjected throughout her employment with Defendant.

200.     After engaging in activity protected by Title VII, Plaintiff experienced adverse job actions, including but not limited to being denied promotions and opportunities for advancement, subjected to an increasingly hostile work environment, and harassed.

201.     Plaintiff has been retaliated against by multiple Department employees, who are mentioned in the facts above.

202.     The retaliation is continuing in nature.

203.     The adverse job actions that Plaintiff experienced were a result of her protected activity.

204.     Plaintiff was retaliated against for engaging in activity protected by Title VII.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor and against Defendant, Sunny Isles Beach, awarding Plaintiff damages as well as costs, back pay, interest, attorneys' fees, and any such further relief this Court deems just and proper.

## COUNT VIII – VIOLATION OF FLORIDA CIVIL RIGHTS ACT, CHAPTER 760, FLORIDA STATUTES; RETALIATION AGAINST SUNNY ISLES BEACH

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 113 as if fully set forth herein.

205.     This is an action against Defendant, Sunny Isles Beach, for unlawful retaliation under the Florida Civil Rights Act, Chapter 760, Fla. Stat.  ("FCRA").

206.   The FCRA contains an anti-retaliation provision, forbidding employers from retaliating, or

from taking adverse personnel action against, those employees who exercise their lawful and

protected rights under the Act.

207.   The FCRA, Fla. Stat. § 760.10(7) reads in applicable part, as follows:

"It is an unlawful employment practice for an employer, an employment agency, a joint
labor management committee, or a labor organization to discriminate against any person
because that person has opposed any practice which is an unlawful employment practice
under this section, or because that person has made a charge, testified, assisted, or
participated in any manner in an investigation, proceeding, or hearing under this section".

208.   Plaintiff is a member of a protected class under Title VII and the Florida Civil Rights

Act because of her Sex, and because of her participation in protected activities within the

meaning of the Florida Civil Rights Act.

209.   Plaintiff, while working for the Defendant's Police Department, was subjected to

discrimination and harassment on the basis of sex.

210.   Plaintiff reasonably engaged in protected activity by complaining about the unlawful

discrimination and sexual harassment to the Department's Command Staff, then to

Defendant's Director of Human Resources, and then to the EEOC.

211.   These complaints constituted Protected activity under Civil Rights Act of 1964 [42

U.S.C. 2000 e-2 (a)], Section 704(a).

212.   As retaliation, Plaintiff has been subjected to adverse employment actions, denied

promotions for which she is qualified, subjected to an increasingly hostile work

environment including acts of harassment.

213.   Defendant's acts, through its agents, were done with malice and reckless disregard for

Plaintiff's rights protecting a person from discrimination due to their sex and retaliation

due to their complaints of unlawful discrimination.

214.    As a direct and proximate result of the actions and omissions of Defendant, Plaintiff has suffered injury, has incurred monetary losses, and has suffered emotional distress, embarrassment and humiliation, as well as the violation of her statutory rights.

WHEREFORE, Plaintiff prays for the entry of a judgment in her favor and against Defendant, Sunny Isles Beach, awarding damages in the form of back pay and front pay, lost wages, interest, lost benefits, pre and post judgment interest, as well as compensatory damages and attorney's fees and costs, and any and all other relief this court deems equitable and just.

## COUNT IX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST SUNNY ISLES BEACH

Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 – 113 as if fully set forth herein.

215.    This is an action, under the common law of the State of Florida, for intentional infliction of emotion distress. Such claims arise from a common nucleus of operative facts as set forth above.

216.    At all times material hereto, the officers within the Department, specifically Chief Maas, Chief Snyder, Captain Grandinetti, Sergeant Gnagi, and Lieutenant Mulvey, intentionally, maliciously, and outrageously inflicted emotional distress on Plaintiff by intentionally harassing her, discriminating against her, and retaliating against her.

217.    More specifically, Lieutenant Mulvey publicly disparaged and humiliated her, issued outrageous and degrading memorandums regarding her supervisory skills and on-duty activity, failed to follow the chain of command in order to humiliate Plaintiff, intentionally showed her pornographic content while on duty, and abusively commented on her underwear while on duty.

218.   Furthermore, Captain Grandinetti discouraged and denied Plaintiff the opportunity from moving up the ranks at the Department because she was a woman, and later publicly let it be known that he disliked her and would not promote somebody he did not "feel comfortable" speaking around, referring to working with a woman, specifically the Plaintiff herself, regardless of her qualifications.

219.   Though retired, Officers such as Sergeant Gnagi acted beyond all bounds of human decency by posing with Plaintiff in a retirement day photograph, putting his hand on top of her breast, publicly humiliating Plaintiff in front of the other officers present in the Department, and putting the Plaintiff through emotional distress after the incident.

220.   Officers within the Department such as Chief Maas, Chief Snyder, Captain Grandinetti, and Captain Santiago all ignored Plaintiff's remarks, complaints, statements, and comments regarding the constant and continuous discrimination, harassment, and retaliation against Plaintiff within the Department that led to the filing of this Complaint.

221.   The Department Command Staff allowed Plaintiff to be continuously discriminated, harassed, and retaliated against in an extreme and outrageous manner because she was a woman.

222.   The Department Command Staff failed to condemn and/or discipline other male Officers for their actions to help alleviate Plaintiff from the emotional distress caused by the extreme and outrageous conduct towards Plaintiff.

223.   The conduct was outrageous, extreme, and insulting — going beyond all bounds of decency and regarded as odious and utterly intolerable in a civilized community.

224.   Sunny Isles Beach knew or should have known of the intentional, and extreme and outrageous acts and conduct described hereinabove and failed to take prompt corrective action

to remedy the acts and conduct, and at all times relevant to this action, the employees, agents, and elected officials of Sunny Isles Beach were in the control of the Department, and the Department officers and employees referred to hereinabove were employees and/or agents of Sunny Isles Beach and were acting in the course and the scope of their authority.

225.    The Department's conduct caused and continues to cause Plaintiff severe emotional distress, including, but not limited to, embarrassment, humiliation, mental anguish, and suffering.

WHEREFORE, Plaintiff respectfully requests entry of judgment in her favor and against Defendant, Sunny Isles Beach, awarding compensatory damages and punitive damages together with prejudgment interest, attorney's fees and costs, along with such further relief as this Court deems equitable and just.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated this 6th day of November 2020.

Respectfully submitted,

s/Robert L. Switkes
Robert L. Switkes, Esq.
Florida Bar No.: 241059
rswitkes@switkeslaw.com
**SWITKES & ZAPPALA, P.A.**
407 Lincoln Road, Penthouse SE
Miami, Beach, Florida 33139
Telephone: (305) 534-4757
*Attorneys for Plaintiff, Melissa Porro*